[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14062
Non-Argument Calendar
_____

D.C. Docket No. 8:15-cv-02532-MSS-CPT


PATRICK RYAN BRAY,

Plaintiff - Appellant,

versus

BANK OF AMERICA CORP.,
BANK OF AMERICA, N.A.,

Defendants - Appellees.


_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(September 10, 2019)


Before TJOFLAT, BRANCH, and EDMONDSON, Circuit Judges.

PER CURIAM:

Patrick Bray, proceeding pro se,[1] appeals the district court's grant of summary judgment in favor of Defendants Bank of America Corporation ("BAC") and BAC's wholly-owned subsidiary, Bank of America, N.A. ("BANA"). The district court determined, among other things, that Bray's claims are barred by the applicable statute of limitations. No reversible error has been shown; we affirm.

Beginning in 2004, Bray -- working as an independent investment advisor -- managed a "General Public Account" ("GPA") for American Express Incentive Solutions ("AEIS"). AEIS was a joint venture between Maritz Holdings, Inc. ("Maritz") and American Express.

In 2007, Maritz entered into a syndicated loan with six lenders, including BANA. Maritz later sought to renegotiate the terms of the loan in part because Maritz was contemplating buying out American Express's interest in AEIS. A loan amendment was executed in November 2009. Under the terms of the 2009 Loan Amendment, Maritz was permitted to acquire the minority shares of AEIS on the condition that AEIS's assets (including the GPA) would be held as collateral at

---

[1] We construe liberally pro se pleadings. Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).

2

BANA.  Maritz would not, however, be charged management fees, account opening fees or commissions as a result of the move to Merrill Lynch.  Maritz later purchased AEIS, and the GPA was transferred to Merrill Lynch (a BANA affiliate) in March 2010.

Also in March 2010, Bray went to work for Merrill Lynch and continued to manage the GPA as a Merrill Lynch employee.  Bray later resigned his employment with Merrill Lynch on 28 October 2011.

Bray's resignation prompted a series of emails.  Two Florida-based Merrill Lynch employees emailed a BANA employee, Stephen Bode, informing Bode that Bray had resigned.  In response to both emails, Bode replied that the assets could not move or the loan would be in default.  Within an hour of learning of Bray's resignation, Bode emailed his two contacts at Maritz the following message:

> Patrick bray the merrill fa for intellispend has left the firm.  Our team in florida are concerned that the assets will move and cause a default under the credit agreement.  I assured them that would not occur. . . . Nothing for you to do but just wanted to let you [k]now of the departure.
>
> If you have any questions please let me know.
>
> I will come clean.  I left in the 7th inning.  The excuse doesn't matter. (Wife and baby sick)  I just tell myself I am a good husband and father.

3

The GPA stayed in place following Bray's resignation. The GPA also remained at Merrill Lynch after March 2012, when the 2009 Loan Amendment expired and the GPA was released as collateral.

On 27 October 2015, Bray filed this civil action against BANA and BAC, asserting violations of the Clayton Act, the Sherman Act, and Florida antitrust law. Briefly stated, Bray alleged that the 2009 Loan Amendment constituted an unlawful tying arrangement. As a result of the requirement that the GPA be moved to Merrill Lynch, Bray was prohibited from continuing to manage independently the GPA.

We review de novo a district court's grant of summary judgment, "viewing the evidence in the light most favorable to the nonmoving party." Lehman v. Lucom, 727 F.3d 1326, 1330 (11th Cir. 2013). A party is entitled to judgment as a matter of law if he shows that "no genuine dispute as to any material fact" exists. Fed. R. Civ. P. 56(a). "Our review of the applicable statute of limitations doctrine is a question of law subject to de novo review." New Port Largo v. Monroe Cnty., 985 F.2d 1488, 1493 (11th Cir. 1993). Where there exists no genuine dispute of material fact, we decide as a matter of law whether a complained-of act gives rise to the accrual of a new cause of action. See Lehman, 727 F.3d at 1330-34 (in the context of a civil RICO case --applying a separate accrual rule derived from the

4

Clayton Act -- the Court determined as a matter of law that the complained-of injuries were no "new and independent" injuries sufficient to restart the statute of limitations).

Bray's federal and state antitrust claims are each subject to a 4-year statute of limitations. See 15 U.S.C. § 15(b); Fla. Stat. § 542.26. Bray concedes that the statute of limitations first began to run, at the latest, in March 2010 when the GPA was transferred to Merrill Lynch. Bray contends, however, that a new cause of action accrued on 28 October 2011, when BANA "threatened" Maritz with default if the GPA was moved.

A cause of action for an antitrust violation "accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." Zenith Radio Corp. v. Hazeltine Research, 401 U.S. 321, 338 (1971). In the context of an alleged "continuing conspiracy to violate antitrust laws," a new cause of action accrues "after the defendant commits (1) an overt act in furtherance of the antitrust conspiracy or (2) an act that by its very nature constitutes a 'continuing antitrust violation.'" Morton's Mkt., Inc. v. Gustafson's Dairy, Inc., 198 F.3d 823, 827-28 (11th Cir. 1999) (citing Zenith, 401 U.S. at 338).

In interpreting the continuing violation rule established in Zenith, we have stressed that "[i]t remains clear . . . that a newly accruing claim for damages must

5

be based on some injurious act actually occurring during the limitations period, not merely the abatable but unabated inertial consequences of some pre-limitations action." Poster Exch., Inc. v. Nat'l Screen Serv. Corp., 517 F.2d 117, 128 (5th Cir. 1975) (remanding for additional factfinding about whether, during the limitations period, "there was some specific act or word precluding [plaintiff] from obtaining supplies from [defendant]."). In other words, "where a defendant commits an act injurious to plaintiff outside the limitations period, and damages continue to result from that act within the limitation period, no new cause of action accrues for the damages occurring within the limitations period because no act committed by the defendant within that period caused them." Imperial Point Colonnades Condo., Inc. v. Mangurian, 549 F.2d 1029, 1035 (5th Cir. 1977) (emphasis in original).

When an alleged antitrust conspiracy results in ongoing sales or the collection of payments over time, we have said that each sale or payment constitutes a new "act" that starts the running of the statute of limitations. See Morton's Mkt., Inc., 198 F.3d at 828 ("when sellers conspire to fix the price of a product, each time a customer purchases that product at the artificially inflated price, an antitrust violation occurs and a cause of action accrues."); Imperial Point Colonnades Condo., Inc., 549 F.2d at 1043 (concluding that the continued

6

collection of rent payments under a purportedly unlawful tying agreement constituted "acts" sufficient to trigger the accrual of new causes of action).

Here, to avoid a statute-of-limitations bar, Bray argues that Bode's 28 October 2011 email to Maritz constituted an "act" upon which a new cause of action accrued. We disagree. Nothing in Bode's email can be construed reasonably as a new injurious act or "an overt act in furtherance of the antitrust conspiracy." Contrary to Bray's characterization, Bode's email was no "threat" to put the loan into immediate default if the GPA moved with Bray. The email -- which was informal in tone and which also addressed personal matters -- merely informed Maritz of Bray's departure from Merrill Lynch and assured Maritz that no default would occur.

Bray's complained-of injury -- the inability to continue to manage independently the GPA -- was caused by the 2009 Loan Amendment and the resulting transfer of the GPA to Merrill Lynch in March 2010: both of which occurred outside the limitations period. Bray has shown no "specific act or word" that occurred within the limitations period that can be construed as an attempt to enforce the agreement or to modify the agreement such that Bray suffered a new injury. The same pertinent condition existed on 29 October 2011 as had existed on 27 October 2011. For example, nothing evidences that Maritz sought to move the

7

GPA upon Bray's departure but was denied or that BANA took (or threatened) legal action against Maritz. In addition, the 2009 Loan Amendment resulted in no continuing sales or collection of payments that might constitute acts in furtherance of the alleged conspiracy sufficient to restart the statute of limitations. No pertinent change in conditions happened by Defendants' acts.

On this record, Bray has failed to show that some act occurred within the limitations period that caused him new injury and, thus, cannot show that a new cause of action accrued. Because Bray's 27 October 2015 complaint was filed more than four years after his cause of action accrued, Bray's complaint is barred by the statute of limitations. We affirm the district court's grant of summary judgment in favor of Defendants.

AFFIRMED.